AMERICAN UNIVERSAL INSURANCE
CO., et al., Plaintiffs, Appellees,

v.

Joseph FALZONE, Defendant, Appellant.

No. 80–1546.

United States Court of Appeals,
First Circuit.

Argued Feb. 9, 1981.
Decided March 25, 1981.

Peter M. Garcia, Lewistown, Maine, with whom Orestis & Garcia, P. A., Lewistown, Maine, was on brief, for defendant, appellant.

Herbert P. Polk, New York City, with whom Whitman & Ransom, New York City, Paul L. Rudman, Clark P. Thompson, and Rudman & Winchell, Bangor, Maine, were on brief, for plaintiffs, appellees.

Before COFFIN, Chief Judge, ALDRICH and WINTER *, Circuit Judges.

PER CURIAM.

Appellant's house burned in 1976. Appellee insurance companies brought this diversity action claiming arson and seeking a declaration that they were not liable for the loss. The jury made a special finding of arson. Appellant cites as error the district court's ruling on an evidentiary point, on a proposed jury instruction, and on appellant's motion for a mistrial. We affirm.

* Of the Fourth Circuit, sitting by designation.

The evidentiary ruling was made at the close of plaintiffs' case. Appellant moved to strike the opinion testimony of a state fire marshal, Ricker, that the fire was of human origin because part of Ricker's opinion had been based on information from other fire marshals on the inspection team that the furnace or heating system was not the cause of the fire.[1] It appears that Ricker had made his own observations of a lawnmower on which burned fragments of wood had fallen from above, suggesting that the fire had not started in the basement, this tending to rule out the furnace as the source; he had also observed in the basement oil tanks two-thirds or three-quarters full; he had eliminated other possible causes—the sun's rays, lightning, spontaneous combustion, electrical wiring; one complete candle had been found, as well as a wrapper devised for two candles, and other items of circumstantial evidence. Ricker also relied on the statements referred to in the motion to strike from his team members, who were more experienced in inspecting oil burners.

The district court's refusal to strike Ricker's testimony was fully justified by Federal Rule of Evidence 703.[2] Even more illuminating, in the light of the facts of this case, are the accompanying advisory notes, which read in part:

"Facts or data upon which expert opinions are based may, under the rule, be derived from . . . presentation of data to the expert outside of court and other than by his own perception. In this respect the rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions and to bring the judicial practice into line with the practice of the experts themselves when not in court. Thus a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and *opinions* from nurses, technicians and other doctors, hospital records and x rays. Most of them are admissible in evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses. The physician makes life-and-death decisions in reliance upon them. His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes." (Emphasis added.)

Appellant conceded Ricker's expert qualifications. Ricker testified that his conclusions were based upon his own investigation of the ruins together with reports from his coinvestigators Bissett and Rollins with whom he said he worked as a "team". Since it is reasonable for one state fire marshal to rely on the contemporaneous and on-the-scene opinions of other investigators on his team as to the portion of the investigation that they carried out within their competence, Ricker's testimony was properly admitted. Fed.R.Evid. 703.[3] The

---

1. The court had overruled an objection made early in Ricker's examination that Ricker's opinion that the fire had not started in the basement was based partly on information that his colleagues had found no troubles with the oil burner, instructing the jury that the testimony was being admitted only to show one of the bases of Ricker's opinion, not for the truth of the report. Appellant seemed content with this ruling, and made no further objection or request of this nature until he made his Rule 50 motion. Since the making of such a request to strike was so belated, without justification in terms of the information available to appellant, the court may well not have been required to entertain the motion. Nevertheless it did and ruled on the merits. We shall do the same.

2. Rule 703 reads:

"Rule 703. Bases of Opinion Testimony by Experts

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

3. *Bryan v. John Bean Division of FMC Corp.*, 566 F.2d 541 (5th Cir. 1978), relied on by appellant, presents quite a different situation from that at bar. In that case "maximum use", *id.* at 544, had been made of the out of court opinions. The court deemed of most importance the fact that there were no "extraneous indicia of reliability" such as the evidence being a

important requirement that reliance be reasonable—a matter requiring the district court's careful consideration—was amply satisfied in this case.

■ Appellant next objects that the district court only charged the jury that proof of arson must be "clear and convincing", not that it need be "clear, convincing, *and* *unequivocal*". A dictum in one recent Maine case does alternate this three part formulation with the standard's more traditional and concise two-adjective phrasing. *See Horner v. Flynn*, 334 A.2d 194, 199, 200 (Me.1975). Given the district court's explicit effort to comply with *Horner's* general thrust rather than its "particular words or phrases" and appellant's own failure to articulate what content "unequivocal" would add to the charge, *cf.* Webster's Third New International Dictionary 2494 (1963) (defining "unequivocal" as "clear"), we regard the omission as an admirable, if minor, blow against tautology.

■ Finally appellant complains of an allegedly improper statement in appellees' closing argument. Our review of this point is precluded by appellant's own tactical decision at trial. The day after closing arguments but before the jury retired to deliberate, appellant stated his concern that appellees' improper argument in closing might require a mistrial. The district court said "Let's have it now. If you are to move for a mistrial, this is the time. Maybe it should have been after the argument." Without objection appellant withdrew his motion for mistrial.

*Affirmed.*

---

routine business record or "because an uninterested, expert third party" was the source. *Id.*

In this case the fire marshals can be said to be such uninterested parties.