### State of Vermont v. John E. Recor

[549 A.2d 1382]

No. 86-379

Present: **Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.**

Opinion Filed May 20, 1988

*Karen Shingler, Chittenden County Deputy State's Attorney*, Burlington, for Plaintiff-Appellee.

*Thomas J. Donovan*, Burlington, for Defendant-Appellant.

**Dooley, J.** Following a jury trial in District Court, Unit No. 2, Chittenden Circuit, defendant was convicted of sexual assault on a child, in violation of 13 V.S.A. § 3252(3). Defendant appeals his conviction and assigns as error, four points. First, defendant claims that he was denied his right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution and by Chapter I, Article 10 of the Vermont Constitution. Second, he argues that the trial judge committed reversible error by permitting testimony relating to a prior bad act. Third, defendant contends that the State's expert witness was improperly allowed to testify as to the credibility of the complaining witness. And, finally, he argues that the State's expert witness was permitted to give hearsay testimony which went beyond the exception for statements made for purposes of medical diagnosis or treatment under V.R.E. 803(4). We affirm.

The facts supporting defendant's first claim are as follows. On February 27, 1985, the police issued a citation to defendant to appear and answer on March 25th. The arraignment date was subsequently continued to July 8, 1985 and a trial date set for November 20, 1985. Defendant filed various motions in the in-

terim. One motion — a motion to require a psychiatric examination of the victim — resulted in a continuation of the trial date. Although the trial date was reset for January 15, 1986, the matter was again continued because the State amended the information to state a time of offense and the defendant filed a motion for a continuance along with various other motions. The trial was set for March 5, 1986 but was again continued. On March 7, 1986, defendant moved for dismissal based on lack of a speedy trial. The court denied the motion, and the defendant was tried on April 24th. Defendant was never incarcerated prior to trial.

We begin our analysis of defendant's claim by noting — as we have in the past — that "it is 'impossible to determine with precision when the right [to speedy trial] has been denied.'" *State* v. *Unwin*, 139 Vt. 186, 195, 424 A.2d 251, 257 (1980) (quoting *Barker* v. *Wingo*, 407 U.S. 514, 521 (1972)). And, we further observe that "[t]he right to a speedy trial is a constitutional guarantee that cannot be 'quantified into a specified number of days or months.'" *State* v. *Snide*, 144 Vt. 436, 442, 479 A.2d 139, 143 (1984) (quoting *Barker*, 407 U.S. at 523). However, there are four factors that are relevant in determining when such a denial has occurred: the length of the delay, the reason for the delay, defendant's assertion of his or her right, and prejudice to the defendant. *Id.* at 442, 479 A.2d at 143. Applying these factors to the instant case, we conclude that defendant's claim that he was denied a speedy trial is without merit.

As prejudice is the most important factor in analyzing speedy trial issues, *State* v. *Bristol*, 143 Vt. 245, 249, 465 A.2d 278, 280 (1983), we address this element first. Defendant contends that he was subjected to anxiety, embarrassment, and loss of employment because he was compelled to wait an inordinate amount of time before his case came to trial. This claim of prejudice fails because defendant has not shown any prejudice.

In determining the existence of prejudice, "[t]he most important consideration . . . is prejudice to the defense at trial." *Unwin*, 139 Vt. at 197, 424 A.2d at 257. In the instant case, defendant's alleged prejudice focuses exclusively on the stigma naturally attendant to charges of sexual abuse against a child and not on an inability to prepare a defense. Defendant's claim, thus, amounts to nothing more than an "unsupported assertion that delay is per se prejudicial." *Bristol*, 143 Vt. at 249, 465 A.2d at 280. This

claim has no basis in our case law and is not sufficient to show prejudice here.

Not only has defendant failed to demonstrate prejudice, but the record is barren as to any assertion of his right to a speedy trial by a demand for such. While defendant did base several motions to dismiss on the claim that he was not afforded a speedy trial, "[a] motion to dismiss based on an alleged violation of the right to a speedy trial is not the equivalent of a demand for an immediate trial." *Unwin*, 139 Vt. at 196, 424 A.2d at 257. Further, the motions began in March, 1986 — over twelve months after he was charged and less than two months before the trial. Thus, defendant's claim is further weakened by his failure to assert the right he claims to have been violated.

Having failed to show prejudice and having failed to demand a speedy trial, defendant cannot support his claim that his constitutional right was violated on this point. This being so, it is unnecessary for us to settle whether the delay in this case was fourteen months (as defendant claims) or nine and one-half months (as the State claims). It is likewise unnecessary for us to apportion responsibility for whatever delay existed, although the record indicates that both parties contributed to some degree. There are no grounds for reversal based on defendant's claim that he was denied a speedy trial.

In his second assignment of error, defendant argues that the trial court improperly permitted the complaining witness to testify as to a prior, similar assault. This, defendant contends, was reversible error.

The charges in the instant case were based on an assault alleged to have occurred in July or August of 1984. However, the complaining witness also contended that defendant assaulted her in 1982. Before trial began, defense counsel and the prosecution agreed that no reference would be made to the alleged prior incident. The record shows that, in fact, no such reference was made during the State's direct examination of the complaining witness. During cross-examination of the complaining witness, defense counsel attacked her credibility by attempting to show a pronounced bias against defendant. Specifically, counsel questioned the witness about her long-term dislike of the defendant, and the witness ultimately admitted that she had disliked defendant since 1979 and had hated him since at least 1982. When pressed for reasons for this hatred, the witness — who had been cautioned by

the prosecution not to mention the 1982 assault — responded that the defendant was not her natural father, that he disciplined her, and that he compelled her to do household chores. After cross-examination was completed, the prosecutor motioned the court for permission to question the witness — on redirect — about the 1982 incident which, the State contended, was the primary basis for the witness' dislike of the defendant. The court, reasoning that defense counsel had opened the door by attempting to show both bias and its cause, ruled that such questioning would be proper. On redirect, the witness testified that one reason for her dislike of defendant was that he had sexually assaulted her in 1982.

Defendant contends that this testimony was improper because it was highly prejudicial and went to establish a character trait with which the jury could infer defendant had acted in conformity. V.R.E. 404(b) prohibits the introduction of evidence of other crimes, wrongs or acts to prove the character of a person to show that he acted in conformity therewith. Defendant argues that the admission of the testimony about the 1982 assault violated V.R.E. 404(b). This argument is not persuasive.

Defense counsel sought to impeach the credibility of the complaining witness by painting an incomplete picture of unwarranted bias. The State's response was to complete this picture with appropriate detail. The purpose of the witness' testimony on redirect, thus, was not to establish the character of the defendant and was not violative of the prohibition in V.R.E. 404(b). See *State* v. *Parker*, 149 Vt. 393, 395-403, 545 A.2d 512, 514-18 (1988). The rule recognizes that evidence that may be inadmissible for the prohibited purpose may be admitted for other permissible purposes. The use here was for a permissible purpose. See *State* v. *Fortier*, 149 Vt. 599, 600, 547 A.2d 1327, 1328 (1988).

We recognize that we must not create a license for the prosecutor to engage in "overkill" nominally justified by the defendant's actions in raising a line of questions. Thus, in *State* v. *Batchelor*, 135 Vt. 366, 376 A.2d 737 (1977), the Court reversed where the prosecutorial response went far beyond the inquiry opened by the defendant. That case was a DUI case in which the defendant, on cross-examination of the arresting officer, attempted to show bias because the witness had previously told the defendant that he had an alcohol problem. The defense did not inquire as to the reasons for the alleged prejudice of the officer. On redirect, the

prosecution — in an effort to show *why* the statement was made — elicited testimony from the officer regarding two previous arrests of defendant for DUI, and also about the officer's observations of defendant's automobile parked at local night clubs. Reversing defendant's subsequent conviction, the Court held that defense counsel's questions regarding the existence of prejudice did not open the door for a full exposition of the reasons for such prejudice. *Id.* at 369, 376 A.2d at 740.

In the instant case, unlike *Batchelor*, defense counsel attempted not only to demonstrate bias by the complaining witness, but also attempted to provide a reason for the bias. Once the issue of *why* the complaining witness disliked the defendant was raised on cross-examination, it was proper for the State to present a complete picture for the jury. See *State* v. *Messier*, 146 Vt. 145, 152-53, 499 A.2d 32, 38 (1985); McCormick on Evidence § 32, at 70-71 (3d ed. 1984). Thus, the trial court properly determined that defendant should not benefit from a selective presentation of the facts on cross-examination.

■ Defendant's third assignment of error is that the State's expert witness was improperly permitted to testify about the credibility of the complaining witness. During its case in chief, the State utilized a forensic psychologist with a specialization in children's problems and considerable experience dealing with child sexual abuse cases. The specific testimony that defendant challenges on this point was introduced during the following exchange:

Q. Does it tell you something as a forensic psychologist when a child remains consistent over several interviews?

A. Well, it gives me a sense that what they are saying happened, happened.

In *State* v. *Catsam*, 148 Vt. 366, 371, 534 A.2d 184, 188 (1987), we held that "expert testimony on the truthfulness of child sexual abuse victims is not admissible . . . ." In that case, the State's expert testified about symptoms manifesting post-traumatic stress disorder often associated with child victims of sexual assault. As part of the expert's direct testimony, she indicated that sufferers of post-traumatic stress disorder generally do not make up stories of sexual abuse. This, we determined, was an impermissible encroachment on the jury's function in assessing the credi-

bility of the complaining witness. *Id.*; see also Comment, *State* v. *Catsam: A Clarification of Evidentiary Standards in Vermont Child Sexual Abuse Cases*, 12 Vt. L. Rev. 485, 486-87 (1987).

The testimony given in this case, while not the specific profile evidence at issue in *Catsam*, appears to be of the general type that violates the spirit of *Catsam*. See *Catsam*, 148 Vt. at 370-71, 534 A.2d at 188; Comment, 12 Vt. L. Rev. at 487. This is because it includes a statement that an outward manifestation (i.e., repeating the same story) is indicative of credibility. However, even accepting without deciding that the testimony in this case violates *Catsam*, the transcript demonstrates the conspicuous absence of a defense objection at this point. And, as we have previously observed, " '[t]he duty to exclude objectionable [testimony] lies squarely on the shoulders of defense counsel.' " *State* v. *Kasper*, 137 Vt. 184, 190, 404 A.2d 85, 89 (1979) (quoting *United States* v. *Castenada*, 555 F.2d 605, 610 (7th Cir. 1977)). Without an objection, defendant has failed to preserve this issue for appeal. *State* v. *Campbell*, 146 Vt. 25, 27, 497 A.2d 375, 377 (1985). Under such circumstances, we are bound to reverse only if " 'we find that plain error occurred in the [trial] court's failure to exclude [the testimony] sua sponte.' " Id. (quoting *State* v. *DeJoinville*, 145 Vt. 603, 605, 496 A.2d 173, 174-75 (1985)). Plain error exists only if the error or defects affect *substantial rights* of the defendant. V.R.Cr.P. 52(b). We are not persuaded that the trial court committed plain error by failing — despite the absence of a defense objection — to preclude the testimony cited above.

■ Defendant's final argument is that the trial court erred by allowing the State's expert witness to testify about statements made to her by the complaining witness. Defendant contends that this resulted in the presentation of inadmissible hearsay to the jury. See V.R.E. 802. The State argues, however, that the expert's testimony in this regard was introduced only to provide part of the basis for the expert's opinion, and that this is a permissible use.

On cross-examination of the State's expert witness, defense counsel questioned her ability to formulate an opinion after only two sessions, totaling approximately one hour and forty-five minutes, with the complaining witness. On redirect, the State questioned the expert about the basis of her opinion. Both on redirect and on recross, she indicated that her opinion was based in part on statements made by the alleged victim. And on redirect, the

expert related — in detail — the substance of those statements, which included allegations of two incidents of sexual assault by defendant against the victim. Defendant objected to this testimony. The trial court, observing that the complaining witness was present and available for cross-examination regarding the statements, permitted the testimony.

On appeal, both defendant and the State persist in the arguments made before the trial court. Defendant claims that the testimony was hearsay without an exception, and the State argues that, while hearsay, the information was used as part of the basis of the expert's opinion and, thus, was admissible under V.R.E. 803(4). Both parties are mistaken about the exact application of the hearsay rules in this case.

Clearly, out-of-court statements made to a witness who subsequently testifies about those statements have the potential of being hearsay if offered for their truth. See V.R.E. 801(c). For out-of-court statements to be admitted for this purpose (i.e., for their truth), they must fall within a recognized exception to the hearsay rule. V.R.E. 802; see also V.R.E. 803, 804. While there is a hearsay exception for statements made for the purposes of medical diagnosis or treatment, V.R.E. 803(4), under our practice this is a very narrow exception. See Reporter's Notes, V.R.E. 803(4). Specifically, under V.R.E. 803(4) — unlike the corresponding federal rule — statements relating to the inception or cause of a condition or symptom are not admissible even if pertinent to diagnosis or treatment. See Reporter's Notes, V.R.E. 803(4). Thus, the State's reading of V.R.E. 803(4) is too broad and, consequently, its interpretation of the rule is incorrect. See *State* v. *Gallagher*, 150 Vt. 341, 349, 554 A.2d 221, 226 (1988).

However, this does not resolve the question of whether such statements may be introduced for some other purpose. Evidence which would be hearsay if offered for its truth, V.R.E. 801(c), is not hearsay when offered for a nonhearsay purpose. See *Norway* v. *Petit*, 112 Vt. 453, 455-56, 28 A.2d 380, 381-82 (1942); *Hill* v. *North*, 34 Vt. 604, 616 (1861). V.R.E. 703, which addresses the bases of expert opinion, provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in

> forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

This rule controls in the instant case.

Under Rule 703, if an expert relies on the out-of-court statements of another in forming his or her opinion *and* if such statements are of a type reasonably relied on by experts in the particular field, then the statements — even if not independently admissible for their substance — will be admissible for the limited purpose of demonstrating the basis for the expert's opinion. See S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 671 (4th ed. 1986); see also *Paddack* v. *Dave Christensen, Inc.*, 745 F.2d 1254, 1261-62 (9th Cir. 1984) (Federal Rule 703 permits otherwise inadmissible evidence to be introduced merely to show basis of expert's opinion and not for the truth of the matter asserted); *Fox* v. *Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1356 (5th Cir. 1983) ("An expert is permitted to disclose hearsay for the limited purpose of explaining the basis for his expert opinion but not as general proof of the truth of the underlying matter." (citations omitted)); *American Universal Ins. Co.* v. *Falzone*, 644 F.2d 65, 66 n.1 (1st Cir. 1981) (basis testimony may not go to the truth of the matter asserted); *United States* v. *Sims*, 514 F.2d 147, 149 (9th Cir. 1975) (opinion based on inadmissible hearsay may not use the statements for their truth).

V.R.E. 703 is not to be treated as either an auxiliary hearsay exception, or as a backdoor to an expansive reading of existing hearsay exceptions. Rather, the rule provides for limited-purpose admission of otherwise inadmissible evidence, and may not be used to circumvent the restrictions of the hearsay rules generally, or V.R.E. 803(4) in particular. Thus, expert use of otherwise inadmissible evidence as a basis for opinion does not make the evidence suddenly admissible for the inadmissible purpose. See *Rose Hall, Ltd.* v. *Chase Manhattan Overseas Banking Corp.*, 576 F. Supp. 107, 158 (D. Del. 1983), *aff'd*, 740 F.2d 956 (3d Cir. 1984); see also *In re Cheryl H.*, 153 Cal. App. 3d 1098, 1119, 200 Cal. Rptr. 789, 801-02 (1984) (law allows expert testimony based on hearsay, but expert may not convert inadmissible hearsay into admissible opinion); S. Saltzburg & K. Redden at 671 ("Evidence not otherwise admissible is not admitted under [Rule 703] for its truth; it is admitted to explain the basis of the expert opinion.").

In the instant case, the expert's recitation of statements made by the complaining witness was introduced over defendant's hearsay objections. However, as these statements were introduced as basis testimony, the trial judge properly overruled the hearsay objection. That the State incorrectly argued at trial, and again on appeal, that the use of basis testimony made it admissible under V.R.E. 803(4) is of no consequence in this case. As there is no error in the trial court's ruling on defendant's hearsay objection, there is no basis for reversal on this point.

A final issue, not argued by the parties, remains in this case. This relates to the use of limiting instructions when basis testimony is admitted under V.R.E. 703. When hearsay evidence — inadmissible under a hearsay exception — is admitted under Rule 703, the opposing party is entitled to a limiting instruction informing the jury of the narrow purpose for which the evidence has been received. See *Paddack*, 745 F.2d at 1261-62; *American Universal Ins.*, 644 F.2d at 66 n.1; *Sims*, 514 F.2d at 149; S. Saltzburg & K. Redden at 671; cf. *State v. Mecier*, 145 Vt. 173, 180, 488 A.2d 737, 742 (1984) (evidence received for a limited purpose should be accompanied by a limiting instruction). The question of whether adequate instructions were given in this case, however, has not been preserved for our review. This is because, having specifically objected on one ground, defendant has not preserved questions related to other possible infirmities related to the admission of the challenged testimony. See *State v. Bubar*, 146 Vt. 398, 400, 505 A.2d 1197, 1199 (1985); *State v. Ramsay*, 146 Vt. 70, 75, 499 A.2d 15, 19 (1985); *State v. Bissonette*, 145 Vt. 381, 392, 488 A.2d 1231, 1237 (1985). Moreover, defendant neither requested a limiting instruction nor objected to the jury charge actually given; these failures preclude appellate review unless there has been plain error. See *Mecier*, 145 Vt. at 177-79, 488 A.2d at 740-41; *State v. Audette*, 128 Vt. 374, 378, 264 A.2d 786, 789 (1970); *State v. Williams*, 94 Vt. 423, 444, 111 A. 701, 711 (1920); *State v. Harrison*, 66 Vt. 523, 528, 29 A. 807, 808 (1894). As it is unclear that there has been any error, given the substance of the trial court's instructions to the jury, we are unable to find plain error.

*Affirmed.*